IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RUSSELL T. NEAL,
    Plaintiff,

vs.                                    Case No.: 3:06cv8/RV/MD

OFFICER CASSIDAY, et al.,
    Defendants.

---

### REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is before the court upon referral from the clerk. On February 6, 2008, the *pro se* plaintiff, a state prisoner who is proceeding *in forma pauperis* in this action,[1] filed a fourth amended complaint. (Doc. 112). On March 12, 2008, defendants Cassiday, Sormrude and Goddin filed an amended special report and supporting affidavits, (doc. 116), which adopted and incorporated their original special report and supporting documents (doc. 22). On that same date, defendant Stanley filed a separate special report and supporting affidavit, which adopted and incorporated the supporting documents filed with defendants Cassiday, Sormrude and Goddins' original special report. (Doc. 117). Plaintiff did not respond to the special reports. On June 27, 2008, the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special reports would be construed as motions for summary judgment as of July 28, 2008. (Doc. 127). Plaintiff responded (doc. 131), and has now filed an amended response with

---

[1] Court records reflect that as of August 13, 2008 the plaintiff has paid nothing toward the $250.00 filing fee; therefore, as of that date he still owes $250.00 to the court.

supporting documents. (Docs. 146, 147). Defendants have not filed additional argument or Rule 56 materials.

Upon review of the summary judgment record, it is the opinion of the undersigned that defendants' motions for summary judgment should be denied.

## BACKGROUND

Plaintiff was incarcerated at Walton Correctional Institution ("Walton CI") at the time of the events giving rise to this complaint. In plaintiff's verified fourth amended complaint, he alleges that on July 9, 2005, Officer Sutton[2] initiated a disciplinary action against him for possession of contraband. (Doc. 112, pp. 6, 11). Sutton ordered plaintiff to sit on his bunk until the security team arrived. Plaintiff complied. (*Id.*, p. 11). The security team arrived, consisting of defendant Cassiday, defendant Sormrude, Officer Brandon McCullers and Officer Jeremy Ramos.[3] (*Id.*). Officer Bean was on duty within the control room of the dormitory. (*Id.*). Officer Sutton was in a nearby office area. (*Id.*). The security team entered plaintiff's cell, and plaintiff was ordered to stand. (*Id.*, p. 12). Plaintiff complied. Defendant Sormrude removed plaintiff's identification and medical passes from plaintiff's bunk and clipped them to plaintiff's t-shirt. (*Id.*, pp. 12, 16). Plaintiff was led to the foyer entrance of the dormitory.

Officer Sutton re-entered the dorm with defendant Sergeant Stanley behind her. According to plaintiff, one of the officers said, "Cuff up," then each of plaintiff's arms was grabbed by a separate officer. (*Id.*). Plaintiff exclaimed, "I have a front-cuff only pass! I have torn rotator cuffs!" (*Id.*, p. 13). Plaintiff's arms were pulled back while defendant Stanley placed handcuffs on plaintiff's wrists behind plaintiff's back. (*Id.*). Plaintiff states he "audibly expressed the immediate pain felt by the manipulation of pressure on his rotator cuffs. " (*Id.*). Plaintiff's wrists were lifted

---

[2] Officer Sutton is not named as a defendant in this action. (Doc. 112).

[3] Officers McCullers and Ramos are not named as defendants in this action. (Doc. 112).

back and up, forcing plaintiff to bend forward. (*Id.*). Plaintiff complained of pain to all of the officers. (*Id.*). Plaintiff was then escorted outside the dormitory and placed against the south wall of the dorm. The cuffs had not been double locked and continued to click tighter as plaintiff was moved against the wall. (*Id.*, p. 14). The six officers encircled plaintiff and "counseled" or "confronted" him. (*Id.*, pp. 6, 14). Defendant Stanley stated to plaintiff, "I'm washing my hands of this," then turned and walked away. (*Id.*, p. 14). Officer Sutton turned to re-enter the dorm, stated "I'm finished with him," and left. At this time, there were four officers remaining: defendant Cassiday, defendant Sormrude, Officer Ramos and Officer McCullers. (*Id.*). The four officers escorted plaintiff to the "Officer In Charge" or "OIC" office. (*Id.*, p. 15). Plaintiff's hands were still handcuffed behind his back. (*Id.*).

Once inside the OIC office, plaintiff observed defendant Captain Goddin at his desk. (*Id.*, p. 6). There was a blue chair sitting in front of the desk. Defendant Sormrude turned the blue chair sideways. (*Id.*). Defendant Goddin stated, "I think we've had him here for one of our sessions before." Plaintiff responded, "I've never been in here before, Sir." The officers sat plaintiff in the blue chair. Defendant Goddin asked for plaintiff's DC number and attempted to pull up plaintiff's criminal charges. After that was unsuccessful, Goddin took plaintiff's identification and called the other officers to the screen. (*Id.*). Defendant Sormrude removed plaintiff's glasses. (*Id.*). Defendant Cassiday stood behind plaintiff and began punching plaintiff in the head above the hairline. (*Id.*). All of the officers "hooted and laughed and yelled as they criticized [plaintiff] for [his] charges and attempted to force a confession out of [him]." (*Id.*). Defendant Sormrude, who was standing in front of plaintiff, also began punching plaintiff. (*Id.*). Sormrude punched plaintiff on the left side of his head just above the hairline. (*Id.*, pp. 6-7). Defendants Cassiday and Sormrude alternated punches while the other officers cheered and laughed. (*Id.*, p. 7). At one point, defendant Cassiday began punching plaintiff in the neck. Plaintiff exclaimed that he had a neck injury. Cassiday then "karate chopped" plaintiff on the

left side of his neck, asking "Is that better?" (*Id.*). Defendant Sormrude continued to punch the left side of plaintiff's head, and Cassiday resumed his punches to the rear of plaintiff's head. At one point, plaintiff began to slump over. Defendant Cassiday struck plaintiff powerfully in the rear of his head with his fist, forcing plaintiff's head downward and causing it to strike the desk. (*Id.*). Plaintiff's forehead bounced off the desk, "catching [plaintiff] at an angle across [his] right eye." (*Id.*). Plaintiff's head and neck snapped up and back. Defendant Goddin laughed, then said, "Wait, wait!" The officers paused. Defendant Goddin then directed plaintiff to look up at him. When plaintiff looked up at Goddin, Goddin laughed as he examined plaintiff. Goddin looked at each officer, then said, "Okay, go ahead." (*Id.*, p. 8). Defendant Cassiday told plaintiff to get down on his knees. Plaintiff complied. Defendants Cassiday and Sormrude began alternating punches to plaintiff's head. A few times Sormrude hit plaintiff more directly on the top of plaintiff's head. Cassiday and Sormrude continued to "attempt to beat a confession" out of plaintiff concerning the charges for which plaintiff is incarcerated. Plaintiff refused to confess. Defendants Cassiday and Sormrude continued to punch plaintiff until defendant Goddin told them, "That's enough." (*Id.*). The officers told plaintiff that they "would stick together" and that plaintiff could do nothing to them. (*Id.*, p. 9).

Defendant Goddin instructed defendants Cassiday and Sormrude to take plaintiff to medical and then to administrative confinement. (*Id.*). Cassiday and Sormrude continued to threaten plaintiff on the way to the medical department. Upon leaving medical, they threatened plaintiff not to file any grievances or tell medical about the beating. (*Id.*). The desk sergeant at administrative confinement asked plaintiff if he wanted to make a statement. Before plaintiff could answer defendant Cassiday told the sergeant, "No statement."

Plaintiff states that he was kept isolated from all other inmates except for two days when he was moved during Hurricane Ivan. At that time, plaintiff was housed with another inmate who witnessed plaintiff's injuries. Plaintiff received a hearing

on the disciplinary report and was thereafter confined in disciplinary confinement for forty-five days. (*Id.*). During his disciplinary confinement, plaintiff had two other cellmates who witnessed his injuries.

Plaintiff claims defendant Stanley violated his Eighth Amendment rights when he cuffed plaintiff's hands behind his back, knowing that plaintiff had a medical restriction pass that indicated "front cuff only," and despite plaintiff's oral protest. Plaintiff claims defendants Cassiday, Sormrude, and Goddin violated his Eighth Amendment rights when Cassiday and Sormrude assaulted plaintiff without cause or justification, and when defendant Goddin encouraged the assault. As relief, plaintiff seeks $40 million in compensatory and punitive damages for "future, present and past pain and suffering, permanent disfigurement, disability, psyc[h]ological damages." (*Id.*, p. 18). He also seeks injunctive relief. (*Id.*).

Defendants Cassiday, Sormrude and Goddin, in their motions for summary judgment, "totally dispute Plaintiff's allegations that any abuse, beating, or use of force occurred on July 9, 2005." (Doc. 22, p. 2). In support of this contention, defendants have submitted a copy of the Inspector General's office memorandum in which Inspector Ben Smith concluded that plaintiff's allegations of physical abuse were not supported by the evidence. (*Id.*, Ex. A). Defendants have also submitted an affidavit of defendant Stanley dated September 14, 2005 (*id.*, Ex. B); a copy of the Bureau of State Investigations case summary and attachments (*id.*, Ex. C); and a copy of plaintiff's medical records from Walton CI (*id.*, Ex. D). Defendants argue that the foregoing belie plaintiff's allegations that any use of force occurred. In their amended special report, defendants Cassiday, Sormrude and Goddin adopt and incorporate by reference their original special report (doc. 22) and submit their own affidavits to support their contention that no force was applied to plaintiff on the date in question. (Doc. 116). Specifically, defendants Cassiday and Sormrude state that on July 9, 2005 they escorted plaintiff from his dormitory to confinement after plaintiff received a disciplinary report for possession of contraband. They do not

deny that they took plaintiff to the OIC office; however, they adamantly deny that they used any type of physical force upon plaintiff, further contending that plaintiff's allegations are complete fabrications. (*Id.*, Exs. F, G). Defendant Goddin similarly denies that he, Cassiday or Sormrude physically struck plaintiff in the OIC office that day. Cassiday terms plaintiff's allegations of abuse "a complete lie." (*Id.*, Ex. H).

Defendant Stanley, in his special report, (doc. 117), admits that he was the officer who placed handcuffs on plaintiff on the date in question. He denies, however, that it was done in an abusive manner, or that he used unnecessary or excessive force upon plaintiff. In support of this contention, defendant Stanley has submitted an affidavit dated March 5, 2008 in which he states that he ordered plaintiff to place his hands behind his back so wrist restraints could be applied, and that plaintiff complied without mention of any medical condition or medical passes. (*Id.*, Ex. E, Stanley Aff. ¶ 5(B)-(C)). Stanley further states that he double-locked the handcuffs pursuant to Department of Corrections' handcuffing and restraining procedures. (*Id.*, Stanley Aff. ¶ 5(E)). Stanley states that it was not until a week or so after the July 9, 2005 handcuffing that plaintiff received a front cuff pass. (*Id.*, Stanley Aff. ¶ 5(F)).

In response, plaintiff has submitted an affidavit essentially re-stating the facts set forth in his fourth amended complaint. (Doc. 146, Ex. X; Doc. 147, Ex. X). Plaintiff adds that as a result of defendants Cassiday and Sormrude's beating, "his periorbital area of the right orbit was viciously bounced off the corner of the thick hardwood desk. Perminant [sic] and catastrophic damage was sustained (total blindness)." (*Id.*). Attached to plaintiff's amended response (doc. 146) are 225 pages of exhibits consisting of copies of plaintiff's medical records and passes (exs. A, B, C, D, I, J, O); newspaper articles (or plaintiff's handwritten version of them) (exs. E, F, G, H); grievances (ex. K, S); discovery materials (exs. L, M); an affidavit of Andrew A. Amicon (ex. N); an affidavit of Darryl Colbert (ex. P); definitions of medical terms and conditions (some handwritten) purportedly from various sources

(exs. Q, R, V); an affidavit of John E. Youmans (ex. T); an affidavit of Scott A. Shaw (ex. U); a witness list (ex. W); and plaintiff's own affidavit (ex. X).

## DISCUSSION

<u>Summary Judgment Standard</u>

In order to prevail on their motions for summary judgment, defendants must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If defendants successfully negate an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

**Eighth Amendment Standard**

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. The standard applied to Eighth Amendment claims has a subjective and an objective component. Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts

made to temper the severity of the response." *Hudson v. McMillian*, 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain.  *Campbell*, 169 F.3d at 1376 (citation omitted). Thus, as summarized in *Campbell*, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five *Hudson/Whitley* factors outlined above, by deference to prison officials' punitive judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith." *Id.* The Court in *Whitley* narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support <u>a reliable inference of wantonness in the infliction of pain</u> under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 322, 106 S.Ct. 1078 (emphasis added).

<u>Conclusions of Law Regarding Material Facts</u>

As a preliminary matter, the court notes that several of the exhibits attached to plaintiff's amended response may not be considered on summary judgment because they would not be admissible in evidence.  *See* Fed. R. Civ. P. 56(e).  The court need not decide at this time which particular exhibits may or may not be considered, because as the following analysis demonstrates, plaintiff's verified

fourth amended complaint and opposing affidavit establish that genuine issues of material fact exist as to: (1) whether defendant Stanley handcuffed plaintiff behind his back knowing that plaintiff had a front cuff only pass and that this manner of restraint would cause plaintiff unnecessary pain; (2) whether defendants Cassiday and Sormrude beat plaintiff absent any penalogical justification; and (3) whether defendant Goddin encouraged the beating. The facts stated in plaintiff's verified pleadings and sworn affidavit, viewed in the light most favorable to him, are sufficient to enable a reasonable jury to conclude that the defendants violated his Eighth Amendment rights.

The parties do not dispute the following facts. On July 9, 2005, plaintiff was given a disciplinary report for possession of contraband (a razor blade). Defendants, as well as Officers McCullers and Ramos, responded to plaintiff's dormitory ("D" dorm). The parties sharply dispute what occurred next. Plaintiff alleges that defendant Stanley cuffed plaintiff's arms behind his back even though plaintiff had a front cuff only pass clipped to his shirt and even though plaintiff advised him of the pass, cried out in pain and informed Stanley he had torn rotator cuffs. Stanley disputes the fact that plaintiff had a front cuff only pass, and further disputes plaintiff's oral protest. These disputed facts are critical to plaintiff's Eighth Amendment claim against defendant Stanley.[4] Construing the facts in the light most favorable to plaintiff, the non-moving party, a reasonable jury could conclude that defendant Stanley applied the handcuffs maliciously to cause harm.

Plaintiff further alleges that he was severely beaten in the OIC office by defendants Cassiday and Sormrude while defendant Goddin observed and encouraged the beating. Plaintiff alleges that he was sitting, restrained and passive at the time of the beating. Defendants adamantly deny that any correctional officer

---

[4]Plaintiff's medical records, evidence upon which both parties have relied, indicate that plaintiff had a front cuff pass upon his transfer to the Florida Department of Corrections on January 24, 2005. (Doc. 146, Ex. B, p. 1). The records also indicate that on July 28, 2005, the front cuff pass was "renewed." (Doc. 22, Ex. D; Doc. 146, Ex. I, p. 7).

struck plaintiff or used any physical force whatsoever on plaintiff (aside from the handcuffs) on the date in question.  Again, these disputed facts are critical to plaintiff's excessive force claims against defendants Cassiday, Sormrude and Goddin.  Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that these defendants maliciously beat plaintiff without any penalogical justification.

### CONCLUSION

Genuine disputes of material fact exist with regard to plaintiff's Eighth Amendment claims against defendants Stanley, Cassiday, Sormrude and Goddin. Given plaintiff's version of the facts, a reasonable jury could conclude that defendants violated plaintiff's rights under the Eighth Amendment.  Thus, none of the defendants are entitled to summary judgment.

Accordingly it is respectfully RECOMMENDED:

1.  That defendants' motions for summary judgment (docs. 128, 129, 130) be DENIED.

2.  That this matter be referred to the undersigned for further pre-trial proceedings.

3.  That the clerk change the docket to reflect the correct spelling of defendant Cassidy's name as "Cassiday."[5]

At Pensacola, Florida this 13th day of August, 2008.

/s/ Miles Davis
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

---

[5] See Doc. 116, Ex. F.

Case No: 3:06cv8/RV/MD

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**